■ Kathryn Peterson et al., Respondents-Appellants, v Mary Cellery, Respondent, and David H. Picotte et al., Appellants. [940 NYS2d 194]—

Peters, J.P. Appeals from an order of the Supreme Court (Kramer, J.), entered May 5, 2011 in Schenectady County, which partially denied a motion by defendants David H. Picotte and William B. Picotte for summary judgment dismissing the complaint and granted defendant Mary Cellery's motion for summary judgment dismissing the complaint.

In January 2007, plaintiff Kathryn Peterson (hereinafter plaintiff) was rear-ended by a vehicle driven by defendant Mary Cellery. Following the accident, plaintiff drove herself to an urgent care center where she was given pain medication and released. She later sought follow-up care with her primary physician, who diagnosed her with a cervical, thoracic and lumbar sprain and recommended physical therapy. In April

**2.** During oral argument, defendant did not object to Baylys' affidavit being considered in connection with this motion.

2007, plaintiff's vehicle was struck by a vehicle driven by defendant David H. Picotte and owned by defendant William B. Picotte. Plaintiff was removed from the car on a backboard, taken to the hospital and, following her release, continued seeking treatment for back problems, which she states worsened significantly after the second accident. A July 2007 MRI of plaintiff's lower back revealed a degenerative disc dessication with a posterior tear at L5-S1 and mild posterior disc bulge at L4-L5. Plaintiff thereafter received various treatments for her back, which included prolotherapy injections, and ultimately underwent spinal fusion surgery in May 2008. Three months later, plaintiff underwent two consecutive surgical procedures for spinal implants to alleviate pain.

Plaintiff and her husband, derivatively, commenced personal injury actions against Cellery and the Picottes. The actions were consolidated and defendants separately moved for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d). Supreme Court granted Cellery's motion in its entirety, but only partially granted the Picottes' motion, finding a question of fact as to the significant disfigurement and significant limitation of use categories. The Picottes appeal from so much of that order as denied their motion, and plaintiffs appeal from that part of the order as granted Cellery's motion.

First addressing plaintiffs' appeal from the award of summary judgment in favor of Cellery, we find that Cellery met her initial burden of establishing that plaintiff did not suffer a serious injury as a result of the January 2007 accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 352 [2002]; *Clark v Basco*, 83 AD3d 1136, 1137 [2011]). In support of the motion, Cellery presented evidence that X rays and MRIs of plaintiff's cervical and lumbosacral spine performed between the two accidents were normal and revealed no evidence of a traumatic injury. Plaintiff's physical therapy records indicated that her neck pain had markedly improved following the first accident and medical records from February 2007 and March 2007 indicated that she only had a mildly diminished range of motion of the cervical spine and "good range of motion" in her lumbar spine. Further, plaintiff's deposition testimony acknowledged that she returned to work approximately a month after that accident, began working full time shortly thereafter and continued to do so until the second accident. Defendant also submitted the sworn report of Christopher Calder, a neurologist who reviewed plaintiff's medical records and performed an independent medical examination

of plaintiff in 2010. Calder concluded that, although plaintiff may have suffered a minor cervical sprain as a result of the January 2007 accident, there was no objective evidence of any neurological condition or impairment attributable to that accident.

In response to this proof, plaintiffs failed to raise an issue of fact as to whether plaintiff suffered a significant limitation of use of any body function or system as a result of the first accident.[1] To establish a claim under that category, " 'the medical evidence submitted by plaintiff[s] must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system' " (*Dean v Brown*, 67 AD3d 1097, 1098 [2009], quoting *John v Engel*, 2 AD3d 1027, 1029 [2003]; *accord Clark v Basco*, 83 AD3d at 1137). Here, plaintiffs submitted the affidavit of Steven Balsamo, plaintiff's treating physician, who averred that, in the month following the first accident, he detected spasms upon palpation in the sternocleidomastoid as well as the posterior cervical muscles. While the detection of spasms through palpation constitutes objective medical evidence of an injury (*see Clements v Lasher*, 15 AD3d 712, 713 [2005]; *Santos v Marcellino*, 297 AD2d 440, 442 [2002]; *Barbagallo v Quackenbush*, 271 AD2d 724, 725 [2000]), critically absent is any quantitative or qualitative assessment of plaintiff's limitations. Balsamo's conclusory statement that plaintiff suffered "a significant limitation of [her] cervical spine, thoracic spine and lumbar spine" which "was not mild but significant and hindered her movements of her cervical, thoracic and lumbar spine areas" makes no meaningful comparison so as to differentiate serious injuries from mild or moderate ones, and was thus insufficient to establish a significant limitation of use (*see Gonzalez v Green*, 24 AD3d 939, 940-941 [2005]; *Clements v Lasher*, 15 AD3d at 713; *see also Wilber v Breen*, 25 AD3d 836, 836-837 [2006]; *compare Santos v Marcellino*, 297 AD2d at 441-442; *Barbagallo v Quackenbush*, 271 AD2d at 725). Accordingly, Cellery's motion for summary judgment was properly granted.

We next address the Picottes' assertion that Supreme Court should have dismissed plaintiffs' claims under the significant limitation of use and significant disfigurement categories of

1. Although plaintiffs' bill of particulars alleged additional categories of serious injury, these have not been pursued on appeal and are therefore deemed abandoned (*see D'Auria v Kent*, 80 AD3d 956, 957 n 2 [2011]; *Santos v Marcellino*, 297 AD2d 440, 441 [2002]).

serious injury. In support of their motion, the Picottes offered the affidavit of physician Daniel Silverman, who opined that, based upon his review of plaintiff's medical records, no objective medical evidence exists to support the finding of any serious or permanent injury as a result of the April 2007 accident. Silverman noted that X rays of plaintiff's lumbar spine, left hip and pelvis taken immediately following the second accident and an August 2007 MRI of plaintiff's cervical spine were essentially unremarkable, and electrodiagnostic studies of the lower back and left lower extremity performed in April and August 2007 produced normal results. He noted further that plaintiff's subjective complaints of back and neck pain were present following the first accident and that the abnormalities shown in the July 2007 MRI of plaintiff's lumbar spine were mild and did not correlate with plaintiff's symptomology. This evidence was sufficient to shift the burden to plaintiffs to provide competent medical evidence to " 'support [their] claim of serious injury and to connect the condition to the [second] accident' " (*Anderson v Capital Dist. Transp. Auth.*, 74 AD3d 1616, 1617 [2010], *lv denied* 15 NY3d 709 [2010], quoting *Wolff v Schweitzer*, 56 AD3d 859, 861 [2008]; *see Pommells v Perez*, 4 NY3d 566, 580 [2005]).

In opposition, plaintiffs submitted the affidavit of her treating chiropractor Craig Nelson, who opined that plaintiff suffered significant limitations of function in her lower back as a result of the second accident. His conclusions were based on his physical examinations of plaintiff, diagnostic tests and the July 2007 MRI of plaintiff's lumbar spine reflecting an annular tear at L5-S1 and disc bulge at L4-L5. Nelson also quantified the limitation of plaintiff's range of motion in her cervical and lumbar ranges, as measured by a digital dual inclimometer system, and noted that the limitations in plaintiff's lumbar spine progressively worsened over time. Nelson averred that the test results were consistent with his diagnoses and plaintiff's symptoms, as well as his exam of plaintiff and the range of motion test results, and concluded that, based on plaintiff's medical history and his clinical evaluations, plaintiff's symptoms and injuries were causally related to the second accident. Plaintiffs also submitted the affidavits of Edward Scheid, plaintiff's treating neurosurgeon, and Balsamo, who examined plaintiff on separate occasions after each accident, both of whom stated unequivocally that the injuries sustained by plaintiff were caused by the second accident. Their opinions in that regard were supported by their physical examinations of plaintiff and objective medical evidence, including plaintiff's MRI results as well as spinal instability and bilateral compression of the nerve roots at L4, L5 and

S1 found upon performing the May 2008 surgery. These submissions were sufficient to raise an issue of fact as to whether plaintiff sustained a significant limitation of the use of her lower back as a result of the April 2007 accident (*see Chunn v Carman*, 8 AD3d 745, 747 [2004]; *McGuirk v Vedder*, 271 AD2d 731, 732 [2000]; *Evans v Hahn*, 255 AD2d 751, 751-752 [1998]; *Pietrocola v Battibulli*, 238 AD2d 864, 866 [1997]).

Finally, as to plaintiffs' claim of significant disfigurement, the photographs submitted in opposition to the motion, which depict on plaintiff's back a five-inch-long vertical scar from the spinal fusion surgery and a nearly three-inch-long horizontal scar from the subsequent implant surgery, were sufficient to create a question of fact as to whether a reasonable person viewing her back would regard it as unattractive or objectionable (*see Matula v Clement*, 132 AD2d 739, 740 [1987], *lv denied* 70 NY2d 610 [1987]; *Savage v Delacruz*, 100 AD2d 707, 707-708 [1984]; *compare Pietrocola v Battibulli*, 238 AD2d at 865; *Caruso v Hall*, 101 AD2d 967, 968 [1984], *affd* 64 NY2d 843 [1985]).[2] Moreover, plaintiffs' submissions raised a factual issue as to whether the April 2007 accident was the proximate cause of plaintiff's need for the surgeries and, therefore, whether the resultant surgical scars were causally related to that accident (*see Kilmer v Strek*, 35 AD3d 1282, 1282-1283 [2006]; *Johnson v Grant*, 3 AD3d 720, 721-722 [2004]).

Rose, Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

2. Despite the Picottes' assertion to the contrary, Supreme Court did not abuse its discretion in considering the photographs under the circumstances of this case. At least four of the six photographs submitted by plaintiffs were taken for the purpose of opposing the motion to show the appearance of the scars and, thus, could not have been disclosed earlier. Moreover, notwithstanding the fact that plaintiffs' bill of particulars set forth plaintiff's claim that the scars from the surgeries constituted a serious disfigurement, the Picottes chose not to have a physical examination conducted of plaintiff, which would have allowed viewing of the scars, and have failed to allege any prejudice as a result of the timeliness of the disclosures. In any event, even in the absence of such photographs, plaintiff's description of the scars was sufficient to create a question of fact regarding serious disfigurement (*see Lewis v General Elec. Co.*, 145 AD2d 728, 729 [1988]).