Kesick v Burns-Leader (2019 NY Slip Op 01473)





Kesick v Burns-Leader


2019 NY Slip Op 01473


Decided on February 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 28, 2019

526867

[*1]KEVIN KESICK, Respondent,
v
SHARON BURNS-LEADER et al., Appellants.

Calendar Date: January 15, 2019

Before: Egan Jr., J.P., Lynch, Devine, Rumsey and Pritzker, JJ.


Law Offices of Theresa J. Puleo, Syracuse (John F. Pfeifer of counsel), for Sharon Burns-Leader and another, appellants.
Law Offices of Jennifer S. Adams, New York City (Paul G. Hanson of counsel), for Gleed Thompson, appellant.
Rusk, Wadlin, Heppner & Martuscello, LLP, Kingston (John G. Rusk of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeal from an order of the Supreme Court (Fisher, J.), entered December 27, 2017 in Ulster County, which, among other things, denied defendants' motions for summary judgment dismissing the complaint.
On August 12, 2012, plaintiff, a state trooper, was operating his police sport utility vehicle (hereinafter SUV), a Chevrolet Tahoe, westbound on Route 28 in the Town of Olive, Ulster County when he pulled over onto the shoulder of the roadway and activated his emergency lights, intending to make a U-turn to assist another police officer who was involved in a traffic stop in the eastbound lane of travel. After coming to a stop, plaintiff's vehicle was rear-ended in a chain reaction collision involving two other vehicles, one operated by defendant Glenn Thompson and the other operated by defendant Sharon Burns-Leader and owned by defendant Bread Alone. As a result of the rear-end collision, plaintiff sustained injuries to his shoulder and neck.
Plaintiff thereafter commenced this action against defendants to recover for the injuries that he allegedly sustained in the accident. Following joinder of issue, Thompson moved for summary judgment dismissing the complaint on the ground that plaintiff failed to sustain a causally-related serious injury (see Insurance Law § 5102). Burns-Leader and Bread Alone (hereinafter collectively referred to as Bread Alone) thereafter cross-moved for summary judgment dismissing the complaint on the grounds that (1) plaintiff's alleged posttraumatic stress disorder did not meet the requisite serious injury threshold and (2) Bread Alone was not liable for the accident. Finding that defendants failed to meet their summary judgment burden of establishing that plaintiff did not suffer a serious injury, Supreme Court denied Thompson's motion and that part of Bread Alone's cross motion as sought summary judgment based on lack [*2]of serious injury. The court also denied the remainder of Bread Alone's cross motion, finding that Bread Alone failed to provide an adequate nonnegligent explanation for the collision. Supreme Court then, sua sponte, searched the record and granted summary judgment in plaintiff's favor, determining that the evidence submitted established that plaintiff had sustained a serious injury to his cervical spine pursuant to the significant limitation of use of a body function or system category. Defendants now appeal.
Supreme Court did not err in denying Bread Alone's cross motion for summary judgment on the issue of liability. Where, as here, a moving vehicle is involved in a rear-end collision with a stopped vehicle, "a prima facie case of negligence exists that must be rebutted by an adequate, nonnegligent explanation for the collision" (Martin v LaValley, 144 AD3d 1474, 1477 [2016] [internal quotation marks and citation omitted]; see Warner v Kain, 162 AD3d 1384, 1384 [2018]; Grant v Nembhard, 94 AD3d 1397, 1399 [2012]). A "sudden and abrupt stop of the vehicle in front can constitute a sufficient explanation to overcome the inference of negligence" (Johnson v First Student, Inc., 54 AD3d 492, 493 [2008]; see Bell v Brown, 152 AD3d 1114, 1115 [2017]).
Here, Burns-Leader did not submit her own deposition testimony or affidavit in support of Bread Alone's cross motion and, instead, relied on the proffered deposition testimony of Thompson. According to Thompson's testimony, he was following plaintiff's police SUV westbound on Route 28 when he turned his head for about three seconds to observe the traffic stop occurring on the other side of Route 28. When Thompson looked back forward, he observed that plaintiff's police SUV had stopped, and he struck the rear end of it. According to Thompson, three to five seconds after this initial impact, he was, in turn, rear-ended by Burns-Leader. Thompson initially testified that his vehicle was still in contact with plaintiff's police SUV when he was struck by Burns-Leader and, although the impact of this collision was "moderate," his vehicle "barely moved" as a result thereof. Thompson later testified, however, that both his vehicle and plaintiff's police SUV were pushed farther forward as a result of being rear-ended by Burns-Leader.
In opposition to defendants' motions, plaintiff submitted his own deposition testimony wherein he recounts the same basic facts as Thompson with one important distinction — he contends that, although Thompson initially came within six inches of striking his police SUV, no actual contact occurred between them until after Thompson's vehicle was struck by Burns-Leader's vehicle, causing Thompson's vehicle to "lurch[] forward very quickly and [strike his police SUV]." Given these factual discrepancies and Burns-Leader's failure to provide her own account of the accident, the record as a whole fails to sufficiently rebut the inference of negligence. Therefore, a question of fact exists as to the negligence of each defendant and whether such negligence was the proximate cause of the accident and/or plaintiff's injuries. Accordingly, we find no error in Supreme Court's denial of that part of Bread Alone's cross motion as sought summary judgment on the issue of liability (see Bell v Brown, 152 AD3d at 1115; Rodriguez-Johnson v Hunt, 279 AD2d 781, 782 [2001]; Mohamed v Town of Niskayuna, 267 AD2d 909, 911-912 [1999]).
Turning to the issue of serious injury, plaintiff alleges in his bill of particulars that he sustained a serious injury to his cervical spine within the meaning of Insurance Law § 5102 (d) under the permanent, consequential limitation and/or significant limitation of use categories. As the proponents of the underlying motions for summary judgment, it was defendants' burden to establish through competent medical evidence that plaintiff's cervical spine injury did not constitute a serious injury caused by the accident (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 351-352 [2002]; Moat v Kizale, 149 AD3d 1308, 1310 [2017]). In support of their motions, defendants proffered, among other things, plaintiff's deposition testimony and the independent medical examination report of orthopedic surgeon Harvey Seigel, who reviewed plaintiff's medical records and performed an independent medical evaluation. The proffered evidence established that, following the August 2012 accident, plaintiff complained of and sought treatment for neck pain and associated numbness and tingling in his arms and radiating pain down his neck.
In his evaluation, Seigel noted plaintiff's consistent complaints of chronic neck pain since the accident and, upon examination, observed significant decreased range of motion in plaintiff's cervical spine. Although Seigel noted that plaintiff's medical records also demonstrated that he had complained of neck pain on two occasions prior to the subject accident — following a work-related incident in April 2009 and a work-related car accident in June 2009 — these complaints had resolved prior to the subject accident. In any event, such injuries were distinguishable from his present complaints as they did not include symptoms such as numbness, tingling and radiating pain that plaintiff complained of after the subject accident. Moreover, Seigel noted in his report that plaintiff had undergone a preaccident CT scan in February 2012 — six months before the subject accident — that revealed only "minor degenerative disc disease at C6-7 and minimal disease at C5-6." Seigel also reviewed a postaccident MRI of plaintiff's cervical spine performed in March 2016 that, in contrast, revealed "multiple levels of degenerative changes" — including "a large right-sided C5-C6 disc herniation with foraminal stenosis and nerve root compression" and "a larger disc herniation [at C6-C7] eccentric to the left with significant left-sided foraminal stenosis and left C7 nerve root compression" — that were not present in preaccident imaging. Seigel ultimately opined that, as a result of the August 2012 accident, plaintiff sustained a "[c]ervical sprain/strain, superimposed on pre-existing degenerative changes." Based on the foregoing, we agree with Supreme Court that the objective findings in Seigel's report, his attribution of the cervical spine injury to the August 2012 accident, and the indicated diminished range of motion in plaintiff's cervical spine, actually serve to support plaintiff's claim of a serious injury such that defendants' were not entitled to summary judgment dismissing plaintiff's claim of serious injury to his cervical spine (see Pommells v Perez, 4 NY3d 566, 574 [2005]; Cohen v Bayer, 167 AD3d 1397, 1400-1401 [2018]; Moat v Kizale, 149 AD3d at 1315; Durham v New York E. Travel, 2 AD3d 1113, 1114-1115 [2003]).
Although defendants' failure to meet their burden would normally end further inquiry, Supreme Court nevertheless searched the record and granted summary judgment in plaintiff's favor on the threshold issue of serious injury to plaintiff's cervical spine (see CPLR 3212 [b]; Dunham v Hilco Constr. Co., 89 NY2d 425, 429 [1996]). "In order to establish a permanent consequential limitation or a significant limitation of use, the medical evidence submitted . . . must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing the plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system" (Altieri v Liccardi, 163 AD3d 1254, 1255 [2018] [internal quotation marks, brackets and citations omitted]; see Jones v Marshall, 147 AD3d 1279, 1280 [2017]; Tandoi v Clarke, 75 AD3d 896, 897-899 [2010]). Moreover, the submitted medical evidence must "demonstrate that the limitation of use that [the plaintiff] sustained was more than mild, minor or slight" (Jones v Marshall, 147 AD3d at 1280 [internal quotation marks and citation omitted]).
In opposition to defendants' motions, plaintiff submitted, among other things, the affidavit of Teresa Foster, with whom he treated both before and after the subject accident, a copy of his own medical records and a report from Nirit Weiss, a neurosurgeon [FN1]. Foster averred that, following the August 2012 accident, plaintiff sought treatment for, among other things, neck pain. Upon examination, she diagnosed him with, as relevant here, "sprains/strains of the neck." Foster thereafter continued to treat plaintiff for complaints of chronic neck pain, indicating that, from the date of the accident through to the present, he has had ongoing and consistent complaints of neck pain accompanied with "loss of range of motion" and, ultimately, accompanying numbness in his right thumb, index finger and wrist. Based on these continued complaints, Foster ordered an MRI and referred plaintiff to Weiss. In Weiss' subsequent report to Foster, he recommended that, based on his examination and the results of the March 2016 MRI, plaintiff should undergo surgery involving "a C5-C6 and C6-C7 anterior cervical [*3]discectomy and fusion with cadaver donor bone graft." Foster opined that plaintiff's "injuries to his cervical spine, including the herniated discs at C5-C6 and C6-C7[,] are the result of the motor vehicle accident on August 12, 2012." Given the objective medical evidence proffered with regard to plaintiff's cervical injuries, including comparison of the preaccident CT scan and postaccident MRI of plaintiff's cervical spine, the quantitative evidence with respect to plaintiff's diminished range of motion and the medical opinions of both Seigel and Foster that such injuries were causally related to the August 2012 accident, we find no error with Supreme Court's determination that plaintiff was entitled to summary judgment on the issue of serious injury under the significant limitation of use category (see Toure v Avis Rent A Car Sys., Inc., 98 NY2d at 350; McHugh v Marfoglia, 65 AD3d 828, 829 [2009]).
Lynch, Devine, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Plaintiff was entitled to rely upon his own medical records and the unsworn report of Weiss as evidence in opposition to defendants' motions because Seigel's sworn medical opinion relied on the same records such that said records constituted competent evidence (see Pommells v Perez, 4 NY3d at 577 n 5; Womack v Wilhelm, 96 AD3d 1308, 1310 n 2 [2012]).