■ Robert Hildenbrand et al., Respondents, v Betty L. Chin, Appellant. [861 NYS2d 438]—

Cardona, P.J. Appeal from an order of the Supreme Court (O'Connor, J.), entered May 17, 2007 in Ulster County, which denied defendant's motion for summary judgment dismissing the complaint.

In March 2005, plaintiff Robert Hildenbrand (hereinafter plaintiff) was involved in a motor vehicle accident when his car was struck by a vehicle driven by defendant. Thereafter, plaintiff began experiencing headaches, neck pain and left shoulder pain with numbness and tingling down his left arm. Plaintiff and his wife, derivatively, commenced this personal injury action alleging that, as a result of the accident, plaintiff had sustained serious physical injury within the meaning of Insurance Law § 5102 (d). Specifically, the pleadings alleged serious injury in the permanent consequential limitation of use, significant limitation of use, and 90/180-day categories of Insurance Law § 5102 (d). Defendant moved for summary judgment dismissing the complaint on the ground that plaintiff did not suffer a serious injury. Finding questions of fact, Supreme Court denied the motion and this appeal ensued.

Initially, we find that defendant, as the proponent for summary judgment, met her burden of establishing that plaintiff did not suffer a causally-related serious injury (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 352 [2002]; Felton v Kelly, 44 AD3d 1217, 1218 [2007]). In support of her motion, defendant submitted, among other things, a medical report by Rene Elkin, a neurologist, who, upon examination of plaintiff, opined that, despite plaintiff's complaints of headaches and pain in his neck and left arm which were consistent with cervical muscle sprain, there were no objective findings of a permanent or disabling injury resulting from the accident. Rather, consistent with plaintiff's cervical MRI results revealing a degenerative disc disease, Elkin opined that plaintiff's chronic neck pain was related to degenerative spondylosis of the cervical spine, which condition predated the accident and was not a result of any traumatic etiology. Given the submission of such evidence, the burden then shifted to plaintiffs to raise a triable issue of fact that plaintiff suffered a serious injury.

Turning first to the permanent consequential limitation and significant limitation categories, plaintiffs were required to submit medical proof containing "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system" (John v Engel, 2 AD3d 1027, 1029 [2003]; see Felton v Kelly, 44 AD3d at 1218). Towards that end, plaintiffs submitted the results of an EMG test establishing "[m]ild acute denervation in [plaintiff's] C5/C6/C7/C8 muscles is suggestive of multilevel dysfunction," as well as the MRI report which, in addition to the degenerative condition, also noted a "severe degree of cord impingement at C6-7." Plaintiffs also relied upon the medical report of neurologist Lydia Shajenko who examined plaintiff and reviewed his various medical records, including the MRI results. Upon physical examination, Shajenko observed a "significant decreased range of motion in extension, flexion and horizontal movement" and a "significant paraspinal muscle spasm was noted in [plaintiff's] cervical spine with point tenderness especially at C6-7 on the left." In conducting neurological motor, reflex and sensory examinations, Shajenko also observed an increased motor tone, decreased deep tendon reflex in the left upper extremities and decreased light touch in plaintiff's left fingers. Although not set forth in Shajenko's report, plaintiff's loss of range of motion was quantified in Elkin's medical report, comparing such restrictions to normal degrees of movement. Furthermore, Shajenko noted plaintiff's limitation of physical activities attrib-

utable to plaintiff's loss of range of motion and limited use of his left upper extremity, which included restrictions on lifting no more than 10 pounds, his inability to sit or stand more than two hours and limited ability to drive. Based upon plaintiff's asymptomatic condition prior to the accident, the established decreased range of motion of plaintiff's neck and arm and the cervical MRI revealing disc bulges and nerve impingement, plaintiff's primary care physician, Ravi Ramaswami, opined that plaintiff was permanently disabled as a result of the accident. Viewing this evidence in a light most favorable to plaintiffs (*see Toure v Avis Rent A Car Sys.*, 98 NY2d at 353), we find sufficient objective evidence in the record to raise a question of fact with respect to the permanent consequential limitation of use and significant limitation of use categories of Insurance Law § 5102 (d) to defeat defendant's motion for summary judgment (*see Secore v Allen*, 27 AD3d 825, 827-828 [2006]; *Dooley v Davey*, 21 AD3d 1242, 1244 [2005]).

We reach a similar conclusion with respect to the 90/180-day category of serious injury, where plaintiffs were required to submit objective evidence of "a medically determined injury or impairment of a non-permanent nature which prevent[ed] [plaintiff] from performing substantially all of the material acts which constitute [his] usual and customary daily activities" for at least 90 out of the 180 days immediately following the accident (Insurance Law § 5102 [d]). In that regard, plaintiff averred that his symptoms arose for the first time following the accident and he has been unable to return to work as a school bus driver and home health care aide. He further affirms in his pretrial testimony that he is unable to drive long distances, hold a coffee cup in his left hand, shovel snow, do household chores and take out the trash, and he has difficulty bathing himself. Furthermore, as previously indicated, the results of the EMG and MRI, respectively, establish "mild acute denervation . . . suggestive of multilevel dysfunction" as well as both a mild and severe cord impingement. Moreover, in addition to the various medical reports submitted by plaintiffs regarding plaintiff's causally-related impairments, defendant's own expert, physician Adam Soyer, assessed plaintiff with "probable left brachial plexopathy, status post motor vehicle accident." We further note that Elkin acknowledged that "the accident may have resulted in symptoms consistent with cervical muscle sprain and nonspecific headaches." Under these circumstances, we find this evidence sufficient to raise a triable issue of fact with regard to the 90/180-day category of the No-Fault Law (*see* Insurance Law § 5102 [d]).

Spain, Carpinello, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, with costs.