■ Melissa M. Mahar, Appellant, v Laura J. Bartnick, Respondent. [936 NYS2d 770]—

Kavanagh, J.

Initially, plaintiff argues that questions of fact exist regarding whether she sustained a serious injury based on evidence submitted to Supreme Court in connection with defendant's motion. In support of that motion, defendant relied upon plaintiff's medical records, the results of an MRI, records of plaintiff's physical therapy sessions, deposition testimony and reports regarding plaintiff's condition prepared by an orthopedic surgeon retained by her carrier to examine her (see Clark v Basco, 83 AD3d 1136, 1137 [2011]; Dean v Ahn Ja Jin, 78 AD3d 1297, 1298 [2010]). Specifically, this evidence established that shortly after the accident, plaintiff was treated by a physician, Asim Yousuf, for headaches, neck pain and bruises to her knees. Yousuf initially told plaintiff not to work for two weeks, and prescribed physical therapy for her neck pain. After plaintiff participated in a four-month physical therapy regimen, her physical therapist reported, in April 2008, that while plaintiff continued to have some tenderness and muscular tightness in the cervical region, her neck pain had diminished, her "cervical [range of motion was] within functional limits" and her "[s]trength throughout the bilateral upper extremities [was] also within functional limits." In addition, defendant submitted reports of two examinations performed on plaintiff by Jeffrey Gundel, an orthopedic surgeon retained by her insurance company. Gundel initially diagnosed plaintiff with cervicothoracic strain and concluded that she could "rotate 60 degrees to the right and 45 degrees to the left." In a subsequent examination, Gundel noted that plaintiff had only "some slight decrease in rotation to the right with discomfort" and "full rotation

without pain to the left," and determined that further orthopedic treatment was not necessary. Finally, plaintiff was able to return to work three weeks after the accident, and an MRI performed on her cervical spine three months later revealed minimal cervical disc bulges, but was otherwise unremarkable. Based on this evidence, defendant argued that plaintiff did not sustain a serious injury in this accident.

In response to defendant's motion and in support of her claim that she did sustain a serious injury in this accident, plaintiff referred to the MRI examination and the fact that it found disc bulges in her cervical spine. She also points to tests performed after the accident, which revealed that she had suffered a decreased range of motion in her cervical spine. Plaintiff contends that defendant's motion should have been denied because this evidence creates, at the very minimum, a question of fact as to whether she sustained either a permanent consequential limitation of the use of her cervical spine or a significant limitation of its use as a result of the injuries she sustained in this accident (*see* Insurance Law § 5102 [d]; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 352 [2002]; *Hildenbrand v Chin*, 52 AD3d 1164, 1165 [2008]).

Initially, we note that a bulging disc under certain circumstances can qualify as a serious injury if it results in a quantifiable loss in an individual's range of motion (*see Sferra v McGregor*, 69 AD3d 1200, 1202 [2010]; *Dean v Brown*, 67 AD3d 1097, 1097 [2009]). In that regard, plaintiff submitted an affidavit by Yousuf and argued that, when considered in connection with the findings of bulging discs as noted in the MRI, it constituted objective medical evidence establishing that she sustained a serious injury in this accident. However, Yousuf's affidavit and, in particular, his conclusion regarding plaintiff's restrictions in her range of motion was based entirely upon an assessment performed by the physical therapist when plaintiff began her regimen of physical therapy and was not the result of any independent examination that Yousuf performed on her. Moreover, while the physical therapist initially reported restrictions in plaintiff's range of motion, she ultimately concluded, when therapy ended four months later, that plaintiff's cervical range of motion was within functional limits. Plaintiff also submitted as part of her opposition to this motion the findings of neurological exams that Yousuf performed when he treated her, but these tests simply confirmed that plaintiff's symptoms were not the result of any nerve injury. In our view, such evidence, even when viewed in a light most favorable to plaintiff, does not establish the existence of factual questions regarding whether she

sustained either a permanent consequential limitation or significant limitation of the use of her cervical spine as the result of this accident (*see Dean v Ahn Ja Jin,* 78 AD3d at 1298; *Houston v Hofmann,* 75 AD3d 1046, 1049 [2010]), and defendant's motion for summary judgment in this regard was properly granted.

Plaintiff also claims that she sustained a serious injury because her injuries prevented her from performing substantially all of her regular activities for 90 of the 180 days immediately following the accident (*see* Insurance Law § 5102 [d]; *Howard v Espinosa,* 70 AD3d 1091, 1093 [2010]; *Tuna v Babendererde,* 32 AD3d 574, 575 [2006]). As to this claim, we note that plaintiff returned to work within three weeks of the accident, and while she claimed to have lost additional time from work, she was unable to quantify the total amount of time that she missed during this 180-day period. Also, plaintiff did not specifically identify what activities she could no longer perform as a result of the injuries she sustained in this accident. Instead, she claimed that her activities were restricted because "[a]nything that causes—that you need your neck or back for that causes stress . . . I may be able to start doing it but I may not be able to complete it." Such evidence is simply not sufficient to establish the existence of a serious injury under this category of the Insurance Law (*see Solis v Silvagni,* 82 AD3d 1349, 1350 [2011], *lv denied* 17 NY3d 715 [2011]), and defendant's motion for summary judgment on this category of serious injury was also properly granted.

Finally, we agree with Supreme Court's conclusion that the scar that plaintiff now has as a result of this accident does not constitute a significant disfigurement and does not qualify as a serious injury (*see* Insurance Law § 5102 [d]).[1] A scar constitutes a significant disfigurement if a reasonable person upon examining it would conclude that it is " 'unattractive, objectionable or the subject of pity or scorn' " (*Doty v McInerny,* 77 AD3d 1264, 1265 [2010], *lv denied* 16 NY3d 703 [2011], quoting *Baker v Thorpe,* 43 AD3d 535, 537 [2007]; *see Caruso v Hall,* 101 AD2d 967, 968 [1984], *affd* 64 NY2d 843 [1985]). Here, the scar was located on the back of plaintiff's head and, as she concedes, can be covered by her hair. As such, it is not readily visible and, on these facts,[2] does not constitute a significant disfigurement that would qualify as a serious injury resulting from this accident (*see Doty v McInerny,* 77 AD3d at 1265).

Mercure, A.P.J., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

---

1. Plaintiff did not allege in her bill of particulars, as noted by Supreme Court, that this scar constituted a significant disfigurement.

2. The record contains no picture or specific description of the scar.