Devine, J.
Appeal from an order of the Supreme Court (Kramer, J.), entered April 1, 2013 in Schenectady County, which denied defendant’s motion for summary judgment dismissing the complaint.
On June 22, 2008, a vehicle driven by defendant rear-ended a vehicle driven by plaintiff Darlene Raucci (hereinafter plaintiff) as it was stopped at a traffic light in the City of Schenectady, Schenectady County. Plaintiff and her husband, derivatively, commenced this action alleging, among other things, that she sustained serious injuries as defined in Insurance Law § 5102 (d) as a result of the accident. Specifically, plaintiff alleges that she sustained injuries to her neck, back, cervical spine and right hip under the permanent loss of use, permanent consequential limitation of use, significant limitation of use and 90/180-day categories. Following joinder of issue and completion of discovery, defendant moved for summary judgment dismissing the complaint, which motion was denied by Supreme Court. This appeal by defendant ensued.
Defendant bore the initial burden of demonstrating, by the proffer of competent medical evidence, that plaintiff did not sustain serious injuries within the meaning of Insurance Law § 5102 (d) as a result of the accident (see Cole v Roberts-Bonville, 99 AD3d 1145, 1146 [2012]; Haddadnia v Saville, 29 AD3d 1211, 1211 [2006]). In support of his motion, defendant properly relied on plaintiff’s medical records and the unverified reports of plaintiff’s treating physicians to attempt to demonstrate that plaintiff did not sustain a serious injury (see McElroy v Sivasubramaniam, 305 AD2d 944, 945 [2003]; Seymour v Roe, 301 AD2d 991, 991 [2003]).
On the date of the accident, plaintiff received medical treat *1045 ment at a hospital for complaints of upper back and shoulder pain. The hospital records indicate that plaintiff was ambulatory, had a normal range of motion in her extremities and did not exhibit any abnormal disk or soft tissue condition, although she had tenderness to palpation along her thoracic spine and shoulders. Approximately two weeks later, plaintiff saw her primary care physician with complaints of neck and shoulder pain and, in late October 2008, plaintiff underwent an examination by orthopedic surgeon James Lawrence, who determined that plaintiff had “cervical whiplash and refractory pain” requiring stretching and isometric strengthening to regain full range of motion. Plaintiff did not seek further treatment for more than a year, at which time she continued to complain of debilitating neck and shoulder pain, and was found to have significant “degenerative changes” in her neck. Plaintiff underwent surgery to her cervical spine in May 2010 and, after said procedure, plaintiff was found to have done “exceedingly well.” More than a year after the surgery, Lawrence opined that plaintiffs pain was “really minimal” and she had a “full range of motion of her cervical spine.” An independent medical examination (hereinafter IME) performed on plaintiff in April 2012 demonstrated that, although plaintiffs cervical spine range of motion was “restricted in some planes,” plaintiffs back injuries had resolved following surgery and that prior MRIs confirmed that plaintiffs complaints of continuing pain were “consistent with chronic degenerative disc disease.”
In December 2009, plaintiff began complaining of pain in her right hip and thigh and an X ray revealed “generalized osteoporosis of the right hip and pelvis.” A subsequent MRI revealed a degenerative condition of plaintiffs hip, and a cortisone injection and physical therapy were recommended. Plaintiff underwent surgery to her right hip in September 2010 and, thereafter, was found by the surgeon, Shankar Das, to have recovered well despite the existence of “permanent arthritic changes in the hip.” Likewise, the author of the IME report, orthopedic surgeon Thomas Eagan, concluded that, within a reasonable degree of medical certainty, although plaintiff would have continuing issues with her right hip, they were preexisting and degenerative in nature and had no causal relation to the vehicle accident. Based on this evidence, we find that defendant met his burden on the motion with regard to plaintiffs’ permanent consequential limitation of use and significant limitation of use claims.
Thus, the evidentiary burden shifted to plaintiffs to present “ ‘objective, quantitative evidence with respect to diminished *1046 range of motion or a qualitative assessment comparing plaintiffs present limitations to the normal function, purpose and' use of the affected body organ, member, function or system’ ” (Dean v Brown, 67 AD3d 1097, 1098 [2009], quoting John v Engel, 2 AD3d 1027, 1029 [2003]; accord Ostroll v Nargizian, 97 AD3d 1076, 1077 [2012]). To that end, plaintiffs presented affidavits from Lawrence and Das, both of whom averred that plaintiff experienced a marked reduction in her range of motion in her hip and cervical spine as a result of the accident. Specifically, Lawrence affirmed that, although the surgery had helped to alleviate plaintiffs cervical pain, it “resulted in permanent limitations in the range of motion in her cervical spine . . . because approximately 12% or so of functional motion is divided among each subaxial element of the lumbosacral spine” and plaintiff would lose approximately 25% of her flexion and extension and the same approximate amount of loss in her cervical rotation. Lawrence disputed Eagan’s determination that plaintiffs spinal limitations were solely degenerative in nature, and his sworn statement, in conjunction with plaintiffs medical records, was sufficient to raise an issue of fact as to plaintiffs’ claim of a serious cervical spine injury under the permanent consequential limitation of use and significant limitation of use categories (see Perl v Meher, 18 NY3d 208, 218-219 [2011]; Lipscomb v Cohen, 93 AD3d 1059, 1061 [2012]).
As for the injury to plaintiff’s right hip, Das averred that plaintiff had not experienced any prior pain or limitation with the hip and opined that the continuing deterioration of plaintiffs hip — demonstrated by MRIs taken over the course of several months — was causally related to the impact of the vehicle collision. Even after a comprehensive hip surgery and extensive postoperative rehabilitation and physical therapy, Das found that plaintiffs hip continued to have a “permanent restriction in motion” that would require ongoing medical treatment, including possible additional surgery. To the extent that defendant challenges plaintiffs failure to seek treatment of her hip injury until well over a year after the accident, plaintiffs belief that the pain was related to menopause or another “OB/ GYN issue” provides a reasonable explanation for the delayed treatment (see Lipscomb v Cohen, 93 AD3d at 1061). Overall, this evidence, viewed in a light most favorable to plaintiffs, suffices to raise a triable issue of fact, thereby precluding judgment as a matter of law in favor of defendant on plaintiff’s permanent consequential limitation of use and significant limitation of use claims (see Flottemesch v Contreras, 100 AD3d 1227, 1229 [2012]; Colavito v Steyer, 65 AD3d 735, 736 [2009]). Moreover, with respect to plaintiff’s significant disfigurement claim, we *1047 find that the photographs in the record are adequate to create an issue of fact as to whether a reasonable person observing plaintiffs surgical scars would consider them “unattractive or objectionable” (Peterson v Cellery, 93 AD3d 911, 915 [2012]; see Matula v Clement, 132 AD2d 739, 740 [1987], lv denied 70 NY2d 610 [1987]).
We find, however, that Supreme Court erred in denying defendant’s motion for summary judgment dismissing plaintiffs’ serious injury claims under the permanent loss of use and 90/ 180-day categories. Although plaintiffs’ bill of particulars asserted a permanent loss of use of plaintiffs neck and hip, the record is devoid of evidence establishing that her injuries, though permanent, constituted a total loss (see Davis v Cottrell, 101 AD3d 1300, 1301 [2012]; MacMillan v Cleveland, 82 AD3d 1388, 1388 n 1 [2011]). Furthermore, a 90/180-day claim must be supported by competent evidence of a “medically determined injury or impairment of a non-permanent nature” that prevented her from performing her daily activities for at least 90 of the 180 days following the accident (Insurance Law § 5102 [d]; see Clark v Basco, 83 AD3d 1136, 1139-1140 [2011]). The record evidence demonstrates that plaintiff, who was employed as a food services assistant for a school district, did not immediately return to work after the accident, as the school year ended two days later. However, plaintiff resumed employment in September 2008 and, despite subjective complaints to Lawrence on October 29, 2008 that she had “constant” back pain and was having “difficulty at work,” there is no evidence that plaintiffs physicians placed any restrictions on her daily activities within the 180-day period following the accident.* Although plaintiff maintained that she needed assistance from coworkers and family members to complete certain tasks at home and at work, plaintiff failed to present sufficient evidence that her daily activities were substantially curtailed within the relevant time period (see Davis v Cottrell, 101 AD3d at 1303-1304 [2012]; Womack v Wilhelm, 96 AD3d 1308, 1311 [2012]; Nowak v Breen, 55 AD3d 1186, 1188-1189 [2008]).
Peters, EJ., Lahtinen, Garry and Rose, JJ., concur.
Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant’s motion for summary judgment dismissing that part of the complaint alleging that plaintiff Darlene Raucci suffered a serious injury in the permanent loss of use and 90/180-day categories; motion granted to *1048 that extent, partial summary judgment awarded to defendant and said claims dismissed; and, as so modified, affirmed.

 During her examination before trial, plaintiff testified that she returned to work in September 2008 and was subject to medical limitations at that time. However, there is no evidence in the record to support that contention.