JOHN FILLETTE, JR., Appellant, v PETER T. LUNDBERG, Respondent. [55 NYS3d 783]—

Clark, J. Appeal from an order of the Supreme Court (Cahill, J.), entered March 7, 2016 in Ulster County, which, among other things, granted defendant's cross motion for summary judgment dismissing the complaint.

On June 7, 2014, plaintiff was driving northbound when defendant's vehicle, which was traveling in the opposite direction, crossed the double yellow line and struck the front, left side of plaintiff's vehicle. Plaintiff subsequently commenced this action alleging that he sustained a serious injury within the meaning of Insurance Law § 5102 (d) as a result of defendant's negligence. Soon after, defendant joined issue, and, upon

his demand, plaintiff filed a bill of particulars in which he claimed to have sustained a serious injury under the significant limitation of use of a body function or system and the 90/180-day categories.[1] Following discovery, plaintiff moved for summary judgment on the issue of liability, and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiff's motion, granted defendant's cross motion and dismissed the complaint. Plaintiff appeals.

Initially, we agree with plaintiff that Supreme Court erred in denying his motion for summary judgment on the issue of liability. Where, as here, a driver of a motor vehicle crosses a double yellow line into an oncoming lane of traffic in violation of the Vehicle and Traffic Law (*see* Vehicle and Traffic Law §§ 1120, 1126 [a]) and strikes another motor vehicle, a prima facie case of negligence is established (*see Rodriguez v Gutierrez*, 138 AD3d 964, 967 [2016]; *Snemyr v Morales-Aparicio*, 47 AD3d 702, 703 [2008]; *Hazelton v D.A. Lajeunesse Bldg. & Remodeling, Inc.*, 38 AD3d 1071, 1072 [2007]). Here, plaintiff's deposition testimony that defendant's southbound vehicle crossed the double yellow line and entered his northbound lane of travel, coupled with defendant's deposition testimony that he pleaded guilty to a traffic ticket for crossing a double yellow line, established defendant's per se negligence. While violations giving rise to negligence per se may be excused if they are the result of "an unforeseen and unexpected medical emergency" (*Hazelton v D.A. Lajeunesse Bldg. & Remodeling, Inc.*, 38 AD3d at 1072) or other " 'emergency situation not of the driver's own making' " (*Snemyr v Morales-Aparicio*, 47 AD3d at 703, quoting *Foster v Sanchez*, 17 AD3d 312, 313 [2005]; *see Rodriguez v Gutierrez*, 138 AD3d at 967), defendant's testimony, unsupported by any corroborating medical evidence, that he did not recall how the accident had occurred because he "[b]lacked out probably" or "blocked it out" was insufficient to create an issue of fact as to whether the accident was caused by an unforeseen emergency, medical or otherwise (*see Hazelton v D.A. Lajeunesse Bldg. & Remodeling, Inc.*, 38 AD3d at 1072; *Chiaia v Bostic*, 279 AD2d 495, 496 [2001]). Moreover, defendant testified that, although one of his prescription medications had the potential to cause drowsiness, he did not believe that

---

1. Plaintiff also claimed to have sustained a serious injury under the "temporary total disability" category. However, "temporary total disability" is not a category of serious injury set forth in Insurance Law § 5102 (d). Additionally, although plaintiff's brief states that he pleaded "the two 'limitation' categories" and Supreme Court referenced the permanent consequential limitation of use of a body organ or member category in its decision, plaintiff's bill of particulars alleges only the significant limitation of use category.

the prescription made him drowsy because he had become accustomed to the drug after a few weeks. Accordingly, as defendant failed to rebut plaintiff's prima facie showing that defendant's negligence proximately caused the accident, Supreme Court should have granted plaintiff's motion for summary judgment on the issue of liability (*see Chiaia v Bostic*, 279 AD2d at 496).

Turning to defendant's cross motion for summary judgment dismissing the complaint, "[u]nder New York's No-Fault Law, an injured party's right to bring a personal injury action for noneconomic losses . . . arising out of an automobile accident is limited to those instances where such individual has incurred a serious injury" (*Jones v Marshall*, 147 AD3d 1279, 1283 [2017] [citation omitted]; *see* Insurance Law § 5104 [a]; *Cross v Labombard*, 127 AD3d 1355, 1355 [2015]). As relevant here, Insurance Law § 5102 (d) defines a serious injury as a "significant limitation of use of a body function or system" or "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment." As the proponent of a motion for summary judgment dismissing the complaint, the defendant bears the burden of establishing, by competent medical evidence, that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) (*see Baez v Rahamatali*, 6 NY3d 868, 869 [2006]; *DeHaas v Kathan*, 100 AD3d 1057, 1058 [2012]). If the defendant satisfies this initial burden, the plaintiff must then "come forward with objective medical evidence sufficient to create a question of fact regarding the existence of a serious injury caused by the accident" (*Cross v Labombard*, 127 AD3d at 1356; *see Baez v Rahamatali*, 6 NY3d at 869).

When a plaintiff relies on the significant limitation of use of a body function or system category, such claim must be based upon " 'objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body . . . function or system' " (*Martin v LaValley*, 144 AD3d 1474, 1477 [2016], quoting *John v Engel*, 2 AD3d 1027, 1029 [2003]; *see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]). Here, in support of his cross motion for summary judgment dismissing the complaint, defendant proffered the affirmed independent medi-

cal evaluation report of Richard Moscowitz, an orthopedist, who stated that plaintiff had a "full range of motion of both shoulders," that plaintiff's diagnosis of an acute cervical sprain had resolved and that plaintiff had reached maximum medical improvement. Defendant also submitted the unsworn report of Gabriel Aguilar,[2] a neurologist and one of plaintiff's treating physicians, who asserted that plaintiff's cervical sprain appeared to be resolved and that plaintiff had no restriction of movement or spasms in his neck or back. Together, these reports satisfied defendant's initial burden of establishing that plaintiff's alleged neck, back and left shoulder injuries did not qualify as a serious injury under the significant limitation of use category (see Flottemesch v Contreras, 100 AD3d 1227, 1228 [2012]; Womack v Wilhelm, 96 AD3d 1308, 1309-1310 [2012]).[3]

In opposition, plaintiff produced the affirmation of Luis Mendoza, one of plaintiff's treating physicians. In his affirmation, Mendoza stated that, following his examination, he determined that plaintiff suffered from, among other things, lumbar radiculopathy, cervical thoracic lumbar sprain/strain, traumatic bursitis of the left shoulder, left shoulder sprain/strain and cervical thoracic lumbar muscle spasms as a direct result of the June 2014 motor vehicle accident. He asserted that he conducted several clinical objective tests on plaintiff—prior to his involvement in a second automobile accident on September 29, 2014—to determine his range of motion in his neck and lumbar and thoracic lumbar spine. Based on the results of these tests, which he quantified in his affirmation, Mendoza concluded that plaintiff suffered from a "significant loss of range of motion." Mendoza also stated that he observed muscle spasms in plaintiff's spine and that plaintiff tested positive for several other clinical objective range of motion tests to his left shoulder. This evidence, viewed in the light most favorable to plaintiff (see Cross v Labombard, 127 AD3d at 1356; Hyatt v Maguire, 106 AD3d 1180, 1181 [2013]), raised a triable issue of fact as to whether plaintiff's alleged neck, back and left shoulder injuries constitute a serious injury under the sig-

2. In moving for summary judgment, a defendant may rely on unsworn reports or records of the plaintiff's treating physician (see Martin v LaValley, 144 AD3d at 1475; Tuna v Babendererde, 32 AD3d 574, 575 [2006]).

3. To the extent that plaintiff challenges the sufficiency of the findings of Moscowitz or Aguilar, such challenges are improperly raised for the first time on appeal (see Tandoi v Clarke, 75 AD3d 896, 898 n 2 [2010]). In any event, Moscowitz identified the objective tests that he used when quantifying plaintiff's range of motion, and Aguilar compared his range of motion findings to normal values.

nificant limitation of use category (*see Hildenbrand v Chin*, 52 AD3d 1164, 1165-1166 [2008]; *McGuirk v Vedder*, 271 AD2d 731, 732 [2000]), so as to defeat defendant's cross motion for summary judgment dismissing the complaint.

As for plaintiff's alleged psychological injuries, "[i]t has been established 'that a causally-related emotional injury, alone or in combination with a physical injury, can constitute a serious injury' " (*Brandt-Miller v McArdle*, 21 AD3d 1152, 1153 [2005], quoting *Bissonette v Compo*, 307 AD2d 673, 674 [2003]; *see Krivit v Pitula*, 79 AD3d 1432, 1432 [2010]). Here, defendant satisfied his initial burden of producing competent medical evidence establishing that plaintiff's alleged psychological injuries did not qualify as a serious injury under the significant limitation of use category by proffering the psychological evaluation of David Masur, a neuropsychologist. Specifically, Masur concluded, based upon his evaluation, that there was no indication that plaintiff suffered from "significant depression, traumatic stress, difficulty with interpersonal relationships, or behavior dyscontrol." He further stated that any anxiety experienced by plaintiff could not be causally related to the June 2014 motor vehicle accident and that, overall, plaintiff's "prognosis for performance at his optimal level of psychological functioning [was] excellent."

The burden thus shifted to plaintiff to raise a triable issue of fact as to whether his alleged psychological injuries could satisfy the serious injury threshold (*see Brandt-Miller v McArdle*, 21 AD3d at 1154). To that end, plaintiff proffered the affirmed narrative report of Barry Goldman, his primary care physician. Goldman stated that plaintiff visited his primary care practice more than a dozen times between August 2014 and November 2015—three of which predated the second motor vehicle accident in September 2014—for treatment relating to anxiety, stress, insomnia, nightmares, irritability, temperament changes and reliving and experiencing flashbacks of the June 2014 accident. Based on his review of the medical records generated from these visits, as well as his own examinations of plaintiff, Goldman concluded that plaintiff's diagnosis of posttraumatic stress disorder was causally related to the June 2014 motor vehicle accident. He stated that, although the death of plaintiff's wife and the second motor vehicle accident "may have added to his symptoms, the trauma of his first accident was the cause and directly related to his complaints." This evidence was sufficient to raise a question of fact as to whether the June 2014 motor vehicle accident caused plaintiff to suffer psychological injuries constituting a significant limitation of

use of a body function or system (*see Krivit v Pitula*, 79 AD3d at 1432; *Chapman v Capoccia*, 283 AD2d 798, 800-801 [2001]; *compare Clark v Basco*, 83 AD3d 1136, 1139 [2011]).

Finally, with respect to plaintiff's claim under the 90/180-day category, defendant failed to meet his initial burden of showing that plaintiff did not sustain a serious injury under this category. Indeed, defendant failed to come forward with any objective medical evidence regarding plaintiff's ability to perform his usual and customary daily activities during the 180 days following the June 2014 accident (*see Ames v Paquin*, 40 AD3d 1379, 1380 [2007]; *Lowell v Peters*, 3 AD3d 778, 780 [2004]). In any event, even if the burden shifted to plaintiff, we would find that the affirmation of Mendoza, who diagnosed plaintiff as "temporarily totally disabled" as of September 17, 2014, coupled with plaintiff's deposition testimony and the restriction of activities placed upon him by Aguilar in August 2014, raise a triable issue of fact as to the 90/180-day category (*see Monk v Dupuis*, 287 AD2d 187, 192 [2001]; *compare Blanchard v Wilcox*, 283 AD2d 821, 824 [2001]).

For the reasons set forth herein, Supreme Court should have granted plaintiff's motion for summary judgment on the issue of liability and denied defendant's cross motion for summary judgment dismissing the complaint. Accordingly, we reverse the order of Supreme Court.

Garry, J.P., and Lynch, J., concur.

Aarons, J. (concurring in part and dissenting in part). We agree with the majority that Supreme Court erred in denying plaintiff's motion for summary judgment on the issue of liability. With respect to defendant's cross motion for summary judgment, we further agree with the majority that plaintiff raised a triable issue of fact as to whether his alleged neck, back and shoulder injuries constituted a serious injury within the meaning of Insurance Law § 5102 (d). In our view, however, plaintiff's proof was not sufficient to rebut defendant's prima facie showing regarding the alleged psychological injuries. Nor do we agree with the majority's position that the claim under the 90/180-day category should not have been dismissed.

As to plaintiff's alleged psychological injuries, while defendant met his moving burden, in our opinion, plaintiff's proof failed to raise an issue of fact. In opposition to defendant's cross motion, plaintiff relied on a narrative report from Barry Goldman. While Goldman concluded that plaintiff suffered from posttraumatic stress disorder as a consequence of the June 2014 accident, Goldman's opinion has no probative value inasmuch as he failed to identify any objective tests or

diagnostic criteria used in reaching his opinion (see Sellitto v Casey, 268 AD2d 753, 755 [2000]; compare Flanders v National Grange Mut. Ins. Co., 124 AD3d 1035, 1036-1037 [2015]).

Moreover, Goldman opined that plaintiff's psychological injuries were causally related to the June 2014 accident based, in part, on his examinations of plaintiff.* Goldman, however, examined plaintiff on only three occasions and his narrative report does not indicate that he performed any psychological testing during any of those examinations. Goldman also based his opinion upon his review of the medical records generated by his colleague, Michele Kay Goldman, but such medical records are not part of the record. Under these circumstances, we find that plaintiff failed to raise an issue of fact with respect to his alleged psychological injuries.

As to the 90/180-day category, contrary to the conclusion of the majority, we believe that defendant met his moving burden by demonstrating that plaintiff "has [not] been curtailed from performing his usual activities to a great extent" (Licari v Elliott, 57 NY2d 230, 236 [1982]; see Palmer v Moulton, 16 AD3d 933, 935 [2005]). In this regard, although plaintiff testified that he can no longer play golf, he also admitted that he did not do so on regular basis. Furthermore, plaintiff testified that he had difficulty with cooking, putting on his shoes and socks and working with model trains, but there was no evidence indicating that his daily activities were substantially curtailed for at least 90 of the 180 days following the June 2014 accident (see Raucci v Hester, 119 AD3d 1044, 1047 [2014]; Davis v Cottrell, 101 AD3d 1300, 1303 [2012]). Nor did the reports or records from plaintiff's treating physicians place any limitations on his daily activities (see Cole v Roberts-Bonville, 99 AD3d 1145, 1147 [2012]; Womack v Wilhelm, 96 AD3d 1308, 1311 [2012]; Howard v Espinosa, 70 AD3d 1091, 1094 [2010]).

In response, plaintiff failed to tender objective proof demonstrating that he was "prevented from performing substantially all of the material acts that constituted [his] usual and customary daily activities for the relevant period" (Shea v Ives, 137 AD3d 1404, 1406 [2016] [internal quotation marks and citation omitted]; see Palmeri v Zurn, 55 AD3d 1017, 1019 [2008]; Clements v Lasher, 15 AD3d 712, 713-714 [2005]). Although Luis Mendoza, plaintiff's treating physician, noted in his October 2014 report that he instructed plaintiff "to avoid all activities that may exacerbate his condition," he did not

---

* Notably, Goldman, who is a family physician, failed to set forth any psychological training, experience or background in his narrative report.

specify as to whether such directive stemmed from the June 2014 or September 2014 accident (*see Davis v Cottrell*, 101 AD3d at 1304). Nor does Mendoza's conclusion in his affirmation that, in September 2014 prior to the second accident, plaintiff was "temporarily totally disabled" suffice to raise an issue of fact inasmuch as Mendoza did not "relate his diagnosis of injury to any constraint on plaintiff's daily activities" (*Trotter v Hart*, 285 AD2d 772, 773 [2001]; *see Davis v Cottrell*, 101 AD3d at 1303; *Howard v Espinosa*, 70 AD3d at 1094). Accordingly, in our view, summary judgment was properly granted as to the 90/180-day category (*see Clausi v Hall*, 127 AD3d 1324, 1326 [2015]; *Raucci v Hester*, 119 AD3d at 1047).

For these reasons, we respectfully dissent insofar as we would dismiss plaintiff's claim to the extent premised upon psychological injuries allegedly caused by the accident and the claim under the 90/180-day category.

Mulvey, J., concurs. Ordered that the order is reversed, on the law, without costs, plaintiff's motion granted, defendant's cross motion denied, and partial summary judgment awarded to plaintiff.