Cohen v Bayer (2018 NY Slip Op 08994)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Cohen v Bayer

2018 NY Slip Op 08994

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

526718

[*1]ELLERY ANNE COHEN, Respondent,
vBRADFORD BAYER et al., Appellants.

Calendar Date: November 19, 2018
Before: McCarthy, J.P., Egan Jr., Lynch, Devine and Clark, JJ.


Goldberg Segalla LLP, Buffalo (Stewart G. Milch of counsel), for appellants.
Brian Lee Law Firm, PLLC, Saratoga Springs (James A. Lombardo of Horigan, Horigan, Lombardo, PC of counsel), for respondent.

MEMORANDUM AND ORDER
Lynch, J.
Appeal from an order of the Supreme Court (Nolan Jr., J.), entered January 19, 2018 in Saratoga County, which denied defendants' motion for summary judgment dismissing the complaint.
On October 23, 2015, plaintiff was driving her daughter to school and defendant Bradford Bayer, who was operating a van owned by his employer, defendant Bonacio Construction, Inc., rear-ended plaintiff's vehicle as she was stopped and waiting to make a left-hand turn into the school parking area. Plaintiff commenced this action alleging that she suffered a serious injury within the meaning of Insurance Law § 5102. Insofar as it is relevant, plaintiff claimed in her bill of particulars that she injured her spine and elbow and suffers from postconcussive syndrome and various psychological and emotional injuries. Further, she alleged that such injuries constituted serious injuries in the permanent consequential limitation of use of a body organ or member, significant limitation of use of a body function or system and the 90/180-day categories. Following discovery, defendants moved for summary judgment dismissing the complaint, claiming that plaintiff did not suffer a serious injury. Supreme Court denied the motion, and defendants now appeal.
To qualify as a serious injury under the significant limitation of use and permanent consequential limitation of use categories, the "limitation of use or function . . . relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part" (Shea v Ives, 137 AD3d 1404, 1405 [2016] [internal quotation marks and citations omitted]). As proponents of the motion for summary judgment, defendants bore the initial burden of establishing, through competent medical evidence, that plaintiff did not sustain a serious injury caused by the accident (see Fillette v Lundberg, 150 AD3d 1574, 1576 [2017]; Moat v Kizale, 149 AD3d 1308, 1310 [2017]). To this end, defendants' submissions included transcripts of plaintiff's and Bayer's deposition testimony, plaintiff's medical records, MRI and EMG results, affirmations by James [*2]Storey, a board-certified neurologist, Louis Nunez, an orthopedist, and Patrick Hughes, a neurologist, following their respective independent medical examinations.
The record presents a significant factual disagreement about the nature of the accident. Plaintiff testified that it "felt like" Bayer's van was traveling "58 miles an hour" immediately prior to impact and that, upon impact, there was a "sonic boom." She testified that she remembers "flying forward" but not "flying back" and surmised that she must have lost consciousness and "whacked [her] head." She conceded that she did not report this to either the police when they arrived at the scene or to her doctor later that day. Bayer testified that he was waiting in stop-and-go traffic behind plaintiff, his foot slipped off the brake, he rolled forward at a rate of "five to eight miles an hour, max" and bumped into plaintiff's car in front of him. The record includes a photograph of the bumper showing minimal discernible damage.
At the accident scene, plaintiff declined immediate medical treatment. Instead, she dropped her daughter at school, drove home, took a bath and then visited her primary care doctor, who diagnosed a cervical and lumbar strain and recommended that plaintiff apply ice and heat to the affected area and take anti-inflammatory medication. Roughly three weeks after the accident, plaintiff was seen by her father, Thomas Eagan, an orthopedist, who sent her for MRI scans of her spine and an EMG. In December 2015, she was seen by a neurologist whose diagnoses included postconcussion syndrome and posttraumatic stress. The MRI results revealed some disc herniation and bulging in plaintiff's spine, and the EMG showed "slowed ulnar nerve velocity" at the right "cubital segment." After reviewing the MRI and EMG results, Eagan concluded that plaintiff suffered "multiple thoracic disc herniations secondary to injury in question[,] concussion[,] [u]lnar neuritis, all causally related to the injury in question[,] [p]osttraumatic cubital tunnel syndrome, RT elbow[,] [s]uspect direct injury of the ulnar nerve and mid-humerus." From December 2015 through March 2016, plaintiff was seen by two ear, nose and throat specialists, a neurologist and two neuropsychologists. A neuropsychological evaluation, completed in January 2016, demonstrated that plaintiff's functioning ranged from lower to higher than average and that she showed "problems with effort," that is, the validity test results showed that she was giving "suboptimal effort."
Nunez's examination revealed a positive Tinel's sign in the right elbow and positive dollar bill test of the right hand. Using an inclinometer, he also measured a reduced range of motion in plaintiff's cervical spine and "thoracolumbar spine," specifying a significant percentage of loss as to flexion, extension, bending and rotation. Based on his examination and review of plaintiff's records, he concluded that plaintiff suffered a cervical and lumbar strain that was caused by the accident, but was resolving, and unresolved cubital tunnel syndrome; otherwise, Nunez opined that her "[s]ubjective complaints were in excess of what one would expect from the diagnosis." Nunez recommended continued physical therapy for the neck and back. During an April 2016 examination, Hughes also used an inclinometer and measured a specific percentage loss of range of motion in plaintiff's cervical, thoracic and lumbar spines. He concluded that plaintiff suffered a cervical, thoracic and lumbosacral strain, which, though causally related to the accident, had resolved, mild head injury and concussion, also resolved, and that the disc herniations shown on the MRI were preexisting.
Storey examined plaintiff in July 2017. In Storey's view, plaintiff's failure to immediately report loss of consciousness, a head injury, dizziness and balance issues "suggests lack of causation." With regard to the neuropsychological testing results, Storey explained the nature and purpose of the tests, including the validity test, and, with specific reference to plaintiff's results, concluded that the "tests support a psychological rather than a neurological origin for the complaints." Storey further concluded that there was no evidence of clinically significant ulnar dysfunction, that the disc herniations were trivial and preexisting and that the examination was "essentially normal."
We agree with Supreme Court's determination that, with respect to plaintiff's claim that she injured her spine, defendants' submissions failed to establish, as a matter of law, that plaintiff did not suffer a permanent consequential limitation or significant limitation of use of a body [*3]function or system as a result of the accident. Where, as here, objective medical evidence demonstrates the existence of herniated or bulging discs, "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury" (Durham v New York E. Travel, 2 AD3d 1113, 1114-1115 [2003] [internal quotation marks and citation omitted]; see Moat v Kizale, 149 AD3d at 1315). Defendants' submissions included MRI evidence of plaintiff's herniated and bulging discs, and Nunez and Hughes both found objective, quantitative evidence of reduced range of motion in her spine. Nunez concluded that these findings were caused by the accident and none of the medical records indicates that plaintiff ever sought treatment for neck and back pain prior to the accident. Storey's examination did not include a measurement of plaintiff's range of motion, and he did not explain or distinguish Nunez's or Hughes' findings. Accordingly, we agree with Supreme Court that defendants were not entitled to summary judgment dismissing plaintiff's claims of serious injury to her neck and spine (see McIntyre v Village of Liberty, 151 AD3d 1367, 1368-1369 [2017]; Russell v Pulga-Nappi, 94 AD3d 1283, 1285 [2012]).
Turning to plaintiff's claim that she suffered postconcussion syndrome and an elbow injury that qualified as serious injuries, we find that — with respect to these injuries — defendants' submissions were sufficient to satisfy their burden of showing otherwise. Notably, plaintiff did not immediately report hitting her head or losing consciousness. Even accepting as true that plaintiff did hit her head, Storey — after reviewing all of the medical reports, including the results of the neuropsychological examination results conducted by plaintiff's neuropsychologists, and after examining plaintiff — concluded that there was no neurologic explanation for her subjective cognitive symptoms. Similarly, according to Storey, even accepting that plaintiff injured her elbow, the injury was not "clinically significant." In our view, the evidence was sufficient to obligate plaintiff to present "competent proof based upon objective medical findings and tests" sufficient to raise a question of fact with regard to whether these injuries were caused by the accident (Flanders v National Grange Mut. Ins. Co., 124 AD3d 1035, 1036 [2015] [internal quotation marks and citation omitted]; see Fillette v Lundberg, 150 AD3d at 1576; Clark v Basco, 83 AD3d 1136, 1138 [2011]).
To this end, plaintiff submitted affirmations from Eagan, Steven Rappaport, a psychiatrist, and Jaime Krepostman, an ophthalmologist. Krepostman opined that plaintiff suffered "[c]onvergence insufficiency," Rappaport opined that the accident "exacerbated" plaintiff's "unstable moods and problems concentrating, etc.," and Eagan opined that plaintiff suffered a traumatic brain injury and concussion [FN1]. We find that these submissions fall short in raising a question of fact as to plaintiff's postconcussion syndrome claim. No doctor identified an objective basis to support a finding that plaintiff suffered a head injury or resultant cognitive impairment, Krepostman did not explain how convergence insufficiency resulted from either, and no one assessed the degree or severity of plaintiff's alleged cognitive impairments or convergence insufficiency (see Palmeri v Zurn, 55 AD3d 1017, 1019 [2008]; compare Flanders v National Grange Mut. Ins. Co., 124 AD3d at 1037-1038). Similarly, accepting that there was objective evidence of an elbow injury, Eagan opined only that this "ulnar nerve entrapment" is permanent. This finding is not synonymous with "consequential" or "significant" (see Oberly v Bangs Ambulance, 271 AD2d 135, 137-138 [2000], affd 96 NY2d 295 [2001]). Because Eagan did not provide a "qualitative assessment," the submissions failed to demonstrate that plaintiff suffered permanent consequential or significant elbow injury as a result of the accident (Toure v Avis Rent A Car Sys., 98 NY2d 345, 350 [2002]; compare Mrozinski v St. John, 304 AD2d 950, 951-952 [2003]).
Finally, with respect to plaintiff's claim under the 90/180-day category of serious injury, only Hughes examined plaintiff — though barely — prior to the expiration of the 180-day period [*4]following the accident. Because Hughes did not expressly or specifically address plaintiff's claims or limitations during the first 180 days following the accident, we find that defendants failed to meet their burden as to this category of serious injury and, as such, we agree with Supreme Court's denial of this part of defendants' motion (see Poole v State of New York, 121 AD3d 1224, 1225 [2014]; Colavito v Steyer, 65 AD3d 735, 736 [2009]; Ames v Paquin, 40 AD3d 1379, 1380 [2007]).
McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment dismissing that part of the complaint alleging that plaintiff suffered a serious injury to her left elbow and a serious injury attributable to postconcussive syndrome; motion granted to that extent; and, as so modified, affirmed.
Footnotes

Footnote 1: Because defendants' submissions did not address plaintiff's claims that she sustained psychological or emotional injuries under either the permanent consequential limitation of use or significant limitation of use categories of Insurance Law § 5102 (d), we need not assess the adequacy of Rappaport's affirmations.