Iannillo v Felberbaum (2021 NY Slip Op 05913)





Iannillo v Felberbaum


2021 NY Slip Op 05913


Decided on October 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 28, 2021

532678
[*1]Kathryn Iannillo et al., Respondents,
v
Mordechai Felberbaum, Appellant.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

McCabe, Collins, McGeough, Fowler, Levine and Nogan, LLP, Carle Place (Mark P. Donohue of counsel), for appellant.
Finkelstein & Partners, LLP, Newburgh (Kara L. Campbell of counsel), for respondents.



Lynch, J.P.
Appeal from that part of an order of the Supreme Court (Schick, J.), entered December 3, 2020 in Sullivan County, which denied defendant's motion for summary judgment dismissing the serious injury claims under the permanent consequential limitation of use and significant limitation of use categories.
In July 2017, plaintiff Kathryn Iannillo was involved in a motor vehicle accident that allegedly caused injuries to her left wrist and cervical and lumbar spine. Iannillo and her spouse, derivatively, commenced this action against defendant, the driver of the vehicle that hit Iannillo's vehicle, asserting claims for loss of consortium and serious injuries under Insurance Law § 5102 (d). Discovery ensued, following which defendant moved for summary judgment dismissing the complaint, asserting that plaintiff did not sustain a serious injury as defined in Insurance Law § 5102. Supreme Court partially granted the motion to the extent of dismissing the claims for serious injury under the significant disfigurement, permanent loss of use and 90/180-day categories, but denied the motion as to the categories of permanent consequential limitation of use and significant limitation of use, finding that triable issues of fact existed with respect thereto. Defendant appeals from so much of the court's order as partially denied his motion.
"'Under New York's No-Fault Law, an injured party's right to bring a personal injury action for noneconomic losses . . . arising out of an automobile accident is limited to those instances where such individual has incurred a serious injury'" (Mesiti v Knight, 190 AD3d 1141, 1142 [2021], quoting Jones v Marshall, 147 AD3d 1279, 1283 [2017]; see Insurance Law § 5104 [a]). As relevant here, two categories of serious injury are a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]; see Mesiti v Knight, 190 AD3d at 1142). "'Whether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part'" (Mesiti v Knight, 190 AD3d at 1142, quoting Dufel v Green, 84 NY2d 795, 798 [1995]). "[A] plaintiff must demonstrate that the limitation of use that he or she sustained was more than mild, minor or slight" (Burns v Childress, 189 AD3d 1939, 1940 [2020] [internal quotation marks and citations omitted]; see Toure v Avis Rent A Car Sys., 98 NY2d 345, 353 [2002]).
On a motion for summary judgment in this context, "the defendant bears the initial burden of establishing by competent medical evidence that the plaintiff did not sustain a serious injury caused by the accident" (Murgia v Smith, 190 AD3d 1233, 1234 [2021] [internal quotation marks and citations omitted]; see Mesiti v Knight, 190 AD3d at 1143; Harris v Vogler, 187 [*2]AD3d 1392, 1393 [2020]). Where the moving party fails to make a prima facing showing, the motion must be denied "regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If, however, that burden is satisfied, "the plaintiff must [then] come forward with objective medical evidence sufficient to raise a triable issue of fact regarding the existence of a serious injury" (Mesiti v Knight, 190 AD3d at 1143 [internal quotation marks and citations omitted]; see Altman v Shaw, 184 AD3d 995, 997 [2020]).
In support of his summary judgment motion, defendant submitted Iannillo's medical records, her May 2019 deposition testimony and reports from Robert C. Hendler, a board-certified orthopedic surgeon who examined Iannillo in July 2019 and reviewed her underlying medical records. During her deposition, Iannillo recounted her past medical history, revealing that she had carpal tunnel surgery on her left hand in 2009 and that a 2000 car accident had injured her "whole back." She further confirmed that, before the subject accident, she had been diagnosed with herniated discs in her lumbar spine and bulging discs in her cervical spine. As to her symptoms after the subject accident, although Iannillo testified that she did not feel much pain at the scene of the accident and proceeded to work thereafter, she later became "really stiff" and left work to go to the hospital, where she complained of pain in her left wrist, neck and shoulder. Iannillo then went out on a previously scheduled vacation and returned to work the following week as scheduled, confirming that no medical restrictions were placed on her work at that time. Iannillo underwent surgery to her left wrist in December 2017 — performed by orthopedic surgeon Gabriel Dassa — and testified that she continued to use a wrist brace on a daily basis to manage pain. Iannillo testified that it was difficult to drive and that she was prone to dropping household items. She further explained that her husband had taken over certain household chores and their physical intimacy had waned. That said, she continued to perform her job functions as required and could not think of any activity that was completely diminished as a result of her injuries.
The medical records from Crystal Run Healthcare, where Iannillo was examined on the day of the accident, report a pre-accident history of carpal tunnel surgery on her left wrist, physical therapy for pain in her left "hand/wrist" in 2014, and a November 2015 incident in which Iannillo got her left hand stuck under a tire, requiring medical treatment for a suspected soft tissue injury. As to Iannillo's spine, the medical records also document a herniated disc dating back to at least 2014 and that she sought medical treatment for back pain within six months of the subject accident. The physical examination on the date of the accident indicated tenderness in Iannillo's cervical and lumbar spine and an "active painful [*3]range of motion" in her left wrist. Although the X rays did not detect any fractures or dislocations, mild soft tissue swelling in the left wrist was noted. Moreover, MRIs performed in August 2017 indicated multilevel degenerative disc disease in the cervical spine, disc herniation and disc bulging in the lumbar spine and fluid in the distal radioulnar joint of the left wrist, which may have indicated "an occult pinhole tear of the cartilage," even though no tear was directly observed.
To meet his prima facie burden, defendant primarily relied on Hendler's reports, which were based on his review of the medical records and physical evaluation of Iannillo. During the physical examination, Hendler observed a normal range of motion in Iannillo's left wrist, and cervical and lumbar spine. Hendler ultimately opined that, at the time of the accident, Iannillo "may have sustained cervical and lumbosacral sprains, with temporary exacerbation" of her "pre-existing degenerative joint disease and degenerative disc disease of the neck and low back." However, he found no indication of a continued disability to Iannillo's spine and "no permanent findings in her neck or back that would be causally related to the accident of record." After reviewing the preoperative MRI study of Iannillo's left wrist, along with Dassa's operative report and the intraoperative photographs, Hendler "did not see any tear of the [triangular fibrocartilage complex]" (hereinafter TFCC) as reflected in the operative report. While he acknowledged that Iannillo "may have sustained a mild sprain of the left wrist" from the accident, he concluded that "there were no findings at the time of the [December 2017] surgical procedure that would be considered posttraumatic in nature." Accordingly, he ultimately opined that the December 2017 surgery to Iannillo's left wrist was not causally related to the subject accident.
On this record, defendant satisfied his prima facie burden of demonstrating that Iannillo did not sustain a serious injury to her spine within the meaning of Insurance Law § 5102 (d). Defendant submitted evidence that Iannillo had been involved in a 2000 motor vehicle accident that caused injuries to her "whole back," and that she had preexisting conditions in her cervical and lumbar spine, including disc herniation and bulging. Upon examining Iannillo and reviewing her medical records, Hendler ultimately characterized the degenerative disc disease reflected in the August 2017 MRI images as "pre-existing" and found that she had "no present disability" and "no permanent findings . . . that would be causally related to the accident of record." Hendler's opinions, coupled with the medical records documenting Iannillo's preexisting conditions, support a prima facie finding that Iannillo did not suffer a permanent consequential limitation and/or significant limitation of use of her spine as a result of the subject accident (see Mesiti v Knight, 190 AD3d at 1144; Santiago [*4]v Riccelli Enters., Inc., 173 AD3d 1237, 1238 [2019]; Shea v Ives, 137 AD3d 1404, 1405 [2016]; Cole v Roberts-Bonville, 99 AD3d 1145, 1146-1147 [2012]). As defendant satisfied his prima facie burden, the burden shifted to plaintiffs to raise a triable issue of fact in opposition.
"Where, as here, a defendant comes forward with proof that the plaintiff suffers from preexisting conditions, the plaintiff must provide 'objective medical evidence distinguishing [the] preexisting condition[s] from the injuries claimed to have been caused by' the accident underlying the action" (Mesiti v Knight, 190 AD3d at 1144, quoting Falkner v Hand, 61 AD3d 1153, 1154 [2009]). In opposition to the motion, plaintiffs submitted, among other things, clinical reports by Dassa, Sukeb Datta and Aditya Patel — physicians who treated Iannillo after the accident — along with the report of John Ioia, a physician who evaluated Iannillo in March 2018. Although these physicians documented, among other things, "multilevel degenerative disc disease" and bulging discs in Iannillo's cervical and lumbar spine, and opined that these conditions were causally related to the subject accident, they did so in a conclusory manner and completely failed to account for Iannillo's preexisting conditions affecting her spine or to demonstrate that the subject accident may have exacerbated such prior conditions.[FN1] As such, plaintiffs failed to raise a triable issue of fact sufficient to defeat the motion as it relates to the alleged spinal injury (see Mesti v Knight, 190 AD3d at 1145; Santiago v Riccelli Enters., Inc., 173 AD3d at 1238; Franklin v Gareyua, 136 AD3d 464, 465-466 [2016], affd 29 NY3d 925 [2017]; Rivera v Fernandez & Ulloa Auto Group, 123 AD3d 509, 509-510 [2014], affd 25 NY3d 1222 [2015]).
We reach a different result as to Iannillo's left wrist injury. As mentioned above, Hendler concluded that he did not observe a tear of the TFCC in reviewing the preoperative MRI and intraoperative photographs. Finding no tear, Hendler concluded that there was no posttraumatic pathology to relate the need for surgery to the accident. Hendler did not, however, account for Dassa's actual operative findings. Specifically, upon an "[a]rthroscopic examination of the wrist," Dassa found a "TFCC tear" and performed a "[p]artial TFCC excision and debridement." That Hendler may not have observed a TFCC tear in the films does not account for Dassa's visualization and actual repair of the TFCC tear during the surgery. Using Hendler's own reasoning, the existence of a tear evidences a posttraumatic pathology that relates the surgery to the accident. For his part, Dassa opined that the TFCC tear was causally related to the accident. In circumstances such as this — where the opinion of a defendant's expert is premised upon a flawed accounting of the injury — defendant's prima facie burden to establish his entitlement to judgment as a matter of law on the left wrist claim is not satisfied (see generally [*5]Yeu Jin Baik v Enriquez, 124 AD3d 880, 880 [2015]). Dassa further opined, following his examination of Iannillo on August 6, 2019, that she continued to complain of pain and had "significant range of motion impairments" in her left wrist, indicating a "significant level of permanency." Although we recognize that Iannillo's other treating physicians documented that she had a full range of motion in her left wrist without pain following the 2017 surgery, viewing the evidence in a light most favorable to the nonmoving party, we conclude that a triable issue of fact remains as to whether she sustained a permanent consequential limitation of use or a significant limitation of use of her left wrist as a result of the accident (see Fillette v Lundberg, 150 AD3d 1574, 1576-1578 [2017]). Accordingly, Supreme Court properly denied the motion for summary judgment as it related to these categories of serious injury with respect to Iannillo's left wrist.
Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for summary judgment dismissing that part of the complaint alleging that plaintiff Kathryn Iannillo suffered a serious injury under the permanent consequential limitation of use and significant limitation of use categories relating to her cervical and lumbar spine; motion granted to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: It is unclear whether Datta or Dassa were even aware of such preexisting conditions, as their reports state that Iannillo denied any prior history of injuries (see Cole v Roberts-Bonville, 99 AD3d at 1148).